**CONSOLIDATED SUN RAY, INC., et al.**

**v.**

**Harry R. LEA and Roslyn T. Lea, Co-partners trading as Harry R. Lea & Co.**

**Civ. A. No. 28404.**

United States District Court
E. D. Pennsylvania.

Sept. 28, 1967.

Robert H. Malis, Philadelphia, Pa., for plaintiffs.

Arthur R. Littleton, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This is a suit by Consolidated Sun Ray, Inc. (Consolidated), Sun Ray Drug Co. (Sun Ray), a division of Consolidated, and Bargain City U.S.A., Inc. (Bargain City) seeking damages from an insurance broker for alleged breach of duty in the placing of a policy of insurance. Defendants are Harry R. Lea and Roslyn T. Lea, co-partners trading as Harry R. Lea & Co. (hereinafter referred to as Lea or defendant)

Trial of this cause commenced before my late colleague Judge Allan K. Grim, sitting without a jury. Because of his untimely death before completion of the proof, no decision was rendered. To avoid a retrial the parties entered into extensive stipulations and have agreed to have the issue decided upon the record consisting of certain of the pleadings [1] and the aforementioned stipulations.[2] Included in the stipulations are references to memoranda and pleadings in other civil actions in this court which will be referred to hereafter. The matter is now before the court on cross-motions for judgment on that record.

### FACTS

The facts have been stipulated and there is no need to set them forth in extenso. They will be outlined at this juncture only to the extent necessary to make the controversy between the parties understandable. Reference will be made to other facts in the course of the opinion. Briefly stated, the facts are:

Consolidated was formed by the merger on February 2, 1959 of Consolidated Retail Stores (Retail Stores) and Sun Ray. Bargain City was formed as a joint venture by Consolidated and a corporation not involved in this proceeding. Approximately 90% of Bargain City's stock is owned by the public; ownership of the remainder is divided equally between Consolidated and the other joint venturer. Bargain City is in the business of operating shopping centers, leasing space, furniture and equipment, and providing services to concessionaires (in-

cluding Sun Ray) in return for a percentage of sales. Prior to the merger of Retail Stores and Sun Ray, Lea had procured policies of insurance from Eagle Fire Insurance Co. and Eastern Fire and Casualty Company insuring Retail Stores against loss by fire and providing coverage against loss from business interruption due to fire damage. The business interruption clause is commonly referred to as the Use and Occupancy, or simply U & O, clause or coverage. Shortly after the merger Lea procured endorsements [3] from Eagle and Eastern amending the policies to change the name of the assured to "Consolidated Sun Ray, Inc. and/or any affiliated or subsidiary Companies or Corporations, AIMA * " effective February 2, 1959 and specifically naming Bargain City as an assured as of February 10, 1959.

For reasons not here relevant, the Eagle and Eastern policies were cancelled effective July 1, 1959. Lea undertook to replace the policies and agreed with plaintiffs to obtain a policy of insurance which would specifically name Bargain City as an assured, and which would provide the same Use and Occupancy coverage as contained in the Eagle and Eastern policies, excepting that ordinary payroll was to be excluded. Lea conducted negotiations with Anka Agency, Inc., insurance brokers, as a result of which a binder was issued by Steel Insurance Company [4] insuring Consolidated, effective July 1, 1959, against fire losses up to $750,000. By its terms, Steel's binder was stated to be effective only until noon of the 31st day following the effective

---

1. Complaint (document No. 1); Answer (No. 5); Plaintiffs' Reply to New Matter (No. 11); Pretrial Memoranda (Nos. 7 and 8); Requests for Admission of Genuineness of Documents (No. 12); and Answer thereto (No. 13).

2. Documents Nos. 16, 17 and 20.

3. Both counsel in their briefs referred to April 2, 1959 as the date of the issuance of the endorsements. It is apparent that the endorsements were issued earlier than that. In plaintiffs' Exhibits "E" and "F" attached to Document No. 16, letters dated March 10, 1959 from A. Seligman

of Lea to Leon King of Sun Ray, and from Seligman to Reit of Retail Stores, reference was made to enclosed policies and attached endorsements effecting the change of name and adding Sun Ray and Bargain City for an additional premium in a provisional amount.

* Abbreviation for "As their interests may appear."

4. Steel retained only 2% of the risk, reinsuring the remainder with 11 other companies, the bulk of the risk being assumed by Lloyds' Underwriters (61.09%).

date of the binder, or until the policy issued, whichever first occurred.

Steel's policy was received by Lea from Anka Agency on or about September 15, 1959 and was forwarded to Consolidated on September 18, 1959. Contrary to plaintiffs' instructions, the policy issued by Steel *excluded* coverage for Use and Occupancy [5] and did not name Bargain City as an assured. Lea's letter (Exhibit "L", Document 16) accompanying invoices to Sun Ray, Retail Stores and Bargain City for their respective portions of the premium on the Steel policy noted that several endorsements "were inadvertently omitted from the policy, but they will follow as soon as received from the Company and in the meantime you are covered by binder for these endorsements." Thereafter, discussions took place between Lea and Anka Agency as a result of which Anka, over the signature of Arthur Jenchel, its Secretary-Treasurer, issued a letter dated November 16, 1959 (Exhibit 3, Document No. 17) stating, in part: "On the Consolidated Sun Ray policy, it is understood that the policy is extended to cover Use & Occupancy as per previous coverage in the Eagle Fire Insurance Company."

On December 24, 1959, fire totally destroyed the Bargain City building at Horsham, Pennsylvania, causing a loss to plaintiffs from interruption of business and destruction of property well in excess of the $750,000 policy limits. At the time of the fire, Lea had not procured from Steel either the endorsement for Use and Occupancy coverage or the endorsement specifically naming Bargain City as an assured. Immediately after the fire, plaintiffs notified Steel Insurance Company of the loss and made demand for payment of the limits of the policy. Steel refused, denying liability. Plaintiffs thereupon instituted three suits in this court, two against Steel,[6] and the instant action against Lea. Steel defended the suits against it on the grounds, inter alia, that (a) Bargain City was not covered by the policy since it was neither (i) a named assured nor (ii) an affiliate or subsidiary of Consolidated; (b) U & O coverage was not afforded any assured since (i) the policy expressly excluded U & O coverage and (ii) Anka Agency was not authorized to bind Steel by any writing Anka might have issued purporting to bind such coverage; (c) plaintiffs had negligently or fraudulently failed to furnish complete information concerning their prior loss experience and thus the policy was procured by plaintiffs by material false and misleading statements; and (d) the policy had been issued to insure Consolidated only as to those locations comprising Retail Stores division of Consolidated.[7]

The two suits against Steel were consolidated for trial before Judge Grim, sitting without a jury. Plaintiffs attempted to consolidate the instant action as well, but the effort was resisted by Lea. Judge Grim did not act upon that motion to consolidate (the motion was subsequently withdrawn), but did require counsel for Lea to remain in attendance throughout the proceedings against Steel. After several days of trial, and largely through the efforts of Judge Grim, the suits against Steel were settled on April

---

5. On the face of the policy (Exhibit "AA", Document No. 16) it was stated to be "without compensation for loss resulting from interruption of business."

6. Consolidated Sun Ray, Inc., et al. v. The Steel Insurance Company of America, Civil Action No. 28145; and Bargain City, Norristown, Inc. v. The Steel Insurance Company of America, Civil Action No. 29006.

7. Several other defenses, such as lack of jurisdiction over the defendant, insufficient service of process on the defendant, failure to state a claim upon which relief can be granted, were raised in the Answer, but they seem to have been raised perfunctorily. There is nothing in the record before me to indicate that any of the other alleged defenses had a semblance of support.

15, 1965 for $475,000,[8] the settlement agreements expressly reserving to the plaintiffs whatever rights they might have against Lea. In the instant action, plaintiffs seek to recover the difference between the Steel policy limits and the amounts realized in settlement of the suits against Steel. The parties have agreed as to the computation and amount of the damages,[9] if they are to be awarded.

## DISCUSSION

Plaintiffs claim that in failing to procure endorsements for U & O coverage and specifically naming Bargain City,[10] defendant breached the duty he owed to them as an insurance broker. Plaintiffs charge Lea with negligence and breach of contract. Under Pennsylvania law, which is applicable in this diversity suit, whether the charge is negligence or breach of contract, the broker's conduct is measured by the same standard. The duty was set forth in Talley v. Hoffman, 18 Pa.Dist. & Co.R.2d 725, 729 (1959), as follows:

"[a]n insurance broker is under a duty to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of loss to his customer, then he is liable for such loss unless the customer is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss."

See also 16 Appleman, Insurance Law and Practice, § 8841, p. 300; Walker v. Black, 216 Pa. 395, 65 A. 799 (1907); McCormack v. Shuman, 11 Pa.Dist. & Co.R.2d 88 (1957); Fry v. Barrett, 55 Pa.Dist. & Co.R. 640 (1945).

Lea contends, first, that he breached no duty and second, that if he did, not all of Steel's defenses were attributable to his breach, and unless all of Steel's defenses are attributable to his fault, Lea cannot be held liable. I am satisfied by a preponderance of the evidence on this stipulated record that Lea's conduct fell below the standard prescribed for insurance brokers; that Lea's breaches of duty gave rise to all of Steel's colorable defenses in the suits on the policy and resulted in plaintiffs' settlement of the suits on the policy at a substantial loss. Plaintiffs are entitled to be compensated for that loss.

---

8. Lea has not questioned the reasonableness of the settlement. Lea's position has been that the amount of the settlement was reasonable only because it reflected Steel's major defense of "fraud" in the withholding of information on prior loss history, which defense Lea contended was not attributable to any fault of his. Defendant has conceded that if all of Steel's defenses are due to his fault, he is liable for the amount claimed by plaintiffs.

9. The policy required payment 60 days after the loss. The damages, including interest, are computed as follows:

| | |
|---|---|
| Policy Limit | $750,000 |
| Interest on $750,000 from 3/1/60 to 4/15/65 | 230,625 |
| Amount due 4/15/65 | $980,625 |
| Received 4/15/65 | 475,000 |
| Balance | $505,625 |
| Interest from 4/15/65 to 9/28/67 | 74,393 |
| Total | $580,023 |

10. Plaintiffs also complained of Lea's failure to secure assumption agreements from re-insurers and failure to place the insurance with a company authorized to do business in Pennsylvania. With respect to these additional charges, I am satisfied that they were not a proximate cause of any harm to plaintiffs, consequently these additional charges will not be discussed further.

The colorable defenses raised by Steel were:

(a) *Bargain City was not covered by the policy.*

Plaintiffs instructed Lea to procure an endorsement from Steel naming Bargain City as an assured. Lea failed to do so, but contends that no harm resulted from the failure. The policy insured Consolidated and its "affiliated or subsidiary Companies or Corporations." Since plaintiffs have admitted that Bargain City is an affiliate of Consolidated, Lea argues that Bargain City was covered by the policy even though not identified by name therein. In effect, Lea's argument is that the inclusion of Bargain City by name was unnecessary, that it would have added nothing.

█ Lea's argument misses the point. The point in this suit is not whether Bargain City was in fact an affiliate of Consolidated and therefore covered by the policy, rather the issue here is whether the omission of Bargain City made available to Steel a defense it could not have raised if plaintiffs' instructions had been carried out. The answer to the pertinent question is obvious. Had Bargain City been named, its relationship with Consolidated would have been irrelevant; with the omission, the relationship became a matter of importance. Since Consolidated owned less than 5% of Bargain City stock, coverage for Bargain City as an "affiliate" was open to dispute, a dispute which would have been avoided if Bargain City had been specifically named as an assured. It may well have been for the purpose of avoiding such a dispute that plaintiffs instructed Lea to include Bargain City as a named assured.

█ Lea's failure to obtain Steel's endorsement naming Bargain City resulted from Lea's failure to exercise the care that a reasonable and prudent insurance broker would have exercised. Inclusion of Bargain City as a named assured was a matter of importance to plaintiffs and Lea was aware it was. This is evident from the fact that after the merger of Retail Stores and Sun Ray, Lea acted promptly to obtain endorsements from Eagle and Eastern naming Bargain City. When those policies were cancelled, there ·was an exchange of correspondence between plaintiffs and Lea which reveals clearly the importance the ·parties attached to the inclusion. Several months elapsed between the date of issuance of the Steel policy and the fire. The record is devoid of any efforts by Lea to procure the outstanding endorsement in that interval. It was not until *after the fire* that Lea saw the need for action and wrote to Anka (Exhibit "P", Document No. 16) seeking issuance of the endorsement. The attempt was unsuccessful and, if anything, served to direct Steel's attention to the omission.

(b) *Policy did not afford Use and Occupancy coverage.*

█ Contrary to plaintiffs' explicit instructions to Lea to obtain a policy providing Use and Occupancy coverage, the policy issued by Steel expressly *excluded* such coverage. Again, Lea concedes his failure to obtain the endorsement from Steel, but denies that any harm resulted from the failure, contending that "there was in existence a valid and enforcible binder by an authorized agent of Steel Insurance Co. providing for the required coverage." (Defendant's brief, page 5.) Lea's argument, predicated upon the aforementioned letter from Jenchel dated November 16, 1959, is that the letter " * * * *if issued by an agent of Steel,* is a valid enforcible binder providing U & O coverage similar to the previous coverage in the Eagle Insurance Co." (Defendant's brief, page 6. Emphasis in original.) The very phrase italicized by defendant's counsel pinpoints the weakness of that argument. Anka's agency and its authority to issue such binders was precisely the issue raised by Steel in the suits on the policy. Whether or not Anka had such authority is not controlling here. What is important in this proceeding is whether Lea failed to act reasonably and prudently in relying on that purported authority

and, if so, whether such failure created another colorable defense for Steel. The defense was by no means frivolous. Steel denied Anka's authority to bind it for the U & O risk and pointed, with some justification, to its letter to Anka dated July 7, 1959 (Exhibit 26, Document No. 17) granting Anka limited authority to bind it.

Lea contends that he acted as a reasonable and prudent insurance broker in accepting the binder from Anka in lieu of Steel's endorsement. He points to the stipulation between the parties that it is common practice in the insurance business to rely upon oral and written binders until issuance of a policy or endorsement. It was not stipulated, however, that it is common practice, or that it is reasonable and prudent, for one insurance broker to accept another broker's purported authority to bind an insurance carrier on the flimsy evidence of authority on which Lea acted here. Lea had never before dealt either with Steel or with Anka. Lea had no specific knowledge nor did he make any inquiry as to Anka's authority to bind Steel. He was not aware of Steel's letter of July 7 until *after* the fire, consequently knew nothing either of the grant of authority or the limits on Anka's authority to bind Steel. There is no evidence of a history of prior dealings between Anka and Steel from which Lea might reasonably have inferred that Anka was authorized to bind Steel. What Lea relied on was meager indeed: that Anka's president was a reputable, experienced broker (whose company presumably would not issue binders for a carrier unless authorized to do so); that Anka had furnished to Lea a three page brochure about Steel; and finally, that the alleged binder was issued by Anka following a telephone call between Anka and an officer of Steel Insurance Co.

■ The telephone call referred to took place some two months after issuance of the policy. Apparently concerned over the lack of written confirmation of U & O coverage, a Lea employee

visited Anka Agency. While he was there an Anka representative telephoned a Steel officer. After the telephone call the letter containing the alleged binder was issued. But the Lea employee had not participated in the telephone conversation with the Steel officer and the record does not reveal what transpired between the Anka and the Steel representatives. The letter issued by Anka contained no notation that a copy had been sent to Steel. There was nothing to indicate that Steel had been put on notice of, or had acquiesced in, the issuance of the letter "binder". A reasonable and prudent insurance broker would not have relied on such a "binder" without more evidence and assurance of authority.

■ Apart from the unreasonable reliance upon Anka's purported authority, Lea failed to exercise reasonable care *after* the issuance of the alleged binder. The "binder" was dated November 16, 1959. The fire occurred some 40 days later. In that interval, Lea had obtained neither an endorsement from Steel, nor written confirmation of the "binder". The passage of such a period of time was particularly significant in light of the printed condition on the formal binder *issued by Steel* (Exhibit "G", Document No. 16) that it was only effective until and expired at noon on the 31st day following the effective date of the binder. Since the formal binder issued by Steel was, by its terms, effective only for 31 days, Lea did not exercise reasonable care in relying, for a period of time longer than 31 days, upon an informal binder issued by an alleged agent, without written confirmation from the principal.

(c) *Withholding of information by plaintiffs.*

■ Lea contends that, even assuming he was derelict in failing to obtain the endorsements naming Bargain City and providing Use and Occupancy coverage, he may nevertheless not be held liable to plaintiffs since their loss was not due *solely* to Lea's breaches. It is Lea's position that one of the major defenses

asserted by Steel in the suits against it was that the policy was obtained by the deliberate or negligent withholding by plaintiffs of information of Sun Ray's and Bargain City's loss history, and contends therefore:

"If one of the meaningful defenses of the insurance carrier is not related to any action of the broker, the insured cannot recover against the broker for the difference between the settlement figure and the policy limits since there is no method or evidence whatsoever to demonstrate the influence of each defense upon the settlement." (Defendant's brief, page 13.)

This contention is based upon counsel's interpretation of Hilton v. Federated Brokerage Group, Inc., 30 Misc.2d 503, 213 N.Y.S. 171 (1961). It will not be necessary to consider whether the quoted portion of defendant's brief is an accurate statement of the law since I conclude that Steel's defense was attributable to Lea's conduct. Plaintiffs reasonably relied upon Lea to tell them what information was required in connection with the placing and the maintaining of policies of insurance. From correspondence [11] it appears that Lea was concerned with and sought from plaintiffs only information relating to locations and value of the contents of the Sun Ray and Bargain City stores. Plaintiffs furnished such information as Lea requested of them, albeit at times tardily. There were no direct dealings at any time between Steel and plaintiffs. Whatever information Steel required of plaintiffs it sought and obtained through Lea, and plaintiffs, in turn, relied upon Lea to inform them what information was re-quired. If prior loss history was of importance in placing the policy, it was Lea's responsibility to know that and it was Lea's duty to seek out the information from plaintiffs. Consequently, if there was any substance whatsoever to Steel's defense concerning the failure to furnish information as to prior loss history, that defense was likewise atttributable to Lea's fault.

(d) *Policy intended to cover only Retail Stores.*

This was another defense asserted by Steel but neither side in this case has commented much upon it. Steel contended that the policies were intended to apply only to outlets of Retail Stores, not to locations of Bargain City or Sun Ray. If there was any merit at all in that defense it would appear clearly to be due solely to the fault of Lea. There is no room for dispute on that issue in this record. Plaintiffs and Lea clearly intended coverage for Sun Ray and Bargain City stores. It was Lea's responsibility to obtain such coverage from the carrier.

## CONCLUSION

Lea breached the duty of care which he, as an insurance broker, owed to the plaintiffs, his clients. Lea's breach of duty gave rise to all of the insurance company's colorable defenses to plaintiffs' suit on the policy, causing plaintiffs substantial loss for which they are entitled to an award of damages against Lea.

Plaintiffs' motion for judgment on the record will be granted. Defendant's motion for judgment will be denied.

---

11. See, for example, letters marked Exhibits "O", "E", "H", "L", and intra-com-pany memorandum marked Exhibit "M", all attached to Document No. 16.