**POLLY DRUMMOND THRIFTWAY, INC., Plaintiff,**

v.

**W.S. BORDEN COMPANY (a/k/a Borden–Perlman Insurance Agency); Commercial Union Insurance Companies; and LMI Insurance Company, Defendants.**

No. Civ.A.97–272–SLR.

United States District Court, D. Delaware.

May 1, 2000.

James F. Kipp, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, DE, for plaintiff.

Paul Cottrell, Tighe, Cottrell & Logan, P.A., Wilmington, DE, for defendant Borden Perlman Insurance Agency.

Francis G.X. Pileggi, Manta and Welge, Wilmington, Delaware, for defendant Commercial Union Insurance Companies, Joshua Wall, Cozen and O'Connor, Philadelphia, PA, of counsel.

## OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

This is an action filed by plaintiff Polly Drummond Thriftway, Inc., t/a Zingo's Shop–N–Bag ("Polly Drummond"), against defendant W.S. Borden Company, a/k/a the Borden–Perlman Insurance Agency ("Borden–Perlman").[1] At all times relevant to the matters at issue, Polly Drummond obtained its insurance coverage through Borden–Perlman. Polly Drummond claims at bar that, through the negligence of Borden–Perlman, its insurance policy did not cover certain damage sustained by reason of an off-premises power failure that caused the spoilage of certain perishable inventory. Polly Drummond seeks reimbursement of its out-of-pocket expenditures. A bench trial was held on July 14 and 15, 1998. Following are the court's findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

## II. FINDINGS OF FACT

1. Edward Hannon was at all times relevant to this litigation an insurance broker who "produced business" for defendant Borden–Perlman and shared commission revenues with it. (D.I. 65 at 23–24, 26)

2. Borden–Perlman is a property casualty insurance agency. It writes commercial lines insurance and personal lines insurance. (D.I. 65 at 24) Polly–Drummond is a client of Borden–Perlman. (D.I. 9 ¶ 8)

3. Mr. Hannon is licensed as an insurance broker in Delaware, Pennsylvania, and New Jersey. (D.I. 65 at 25)

4. From 1984 to 1988, Mr. Hannon worked for the Fleming Guardian Group ("Fleming"). Fleming's corporate parent is a large food wholesale company, selling groceries and products to individual supermarket owners. Fleming was the insurance agency division of the parent company. Mr. Hannon's job at Fleming was to sell insurance to individual retailers. (D.I. 65 at 28–29)

5. There were certain carriers with whom Fleming would place its clients, including the Great Central Insurance Company, Travelers Insurance, Kemper Insurance Group and Old Republic Insurance Company. These carriers provided products geared to supermarkets, covering such risks as food spoilage. (D.I. 65 at 29–30)

6. Mr. Hannon first met Polly Drummond's owner, Mr. Zingo, through his employment at Fleming and procured insurance coverage for Mr. Zingo in that capacity. (D.I. 65 at 30–31)

7. Mr. Hannon continued to provide coverage for Mr. Zingo at his next place of employment, the Allman Insurance Agency.

8. Mr. Hannon commenced his business relationship with Borden–Perlman in December of 1992. Although Borden–Perlman had license agreements with approximately 12 to 15 carriers, it did not have an agreement with the carrier that issued the policies covering Polly Drummond effective until April of 1993. (D.I. 65 at 36)

---

1. Plaintiff entered into a stipulation of dismissal with defendant Commercial Union Insurance Companies ("Commercial Union"). Because there were cross claims filed by defendant Borden–Perlman against Commercial Union, however, Commercial Union participated in the trial.

9. Mr. Hannon obtained coverage for the 1993–1994 policy year through the LMI Insurance Company and through Chubb Insurance Group. Chubb provided boiler and machinery coverage which included coverage for off-premises power interruption and food spoilage. (D.I. 65 at 37)

10. The boiler and machinery policy in dispute was issued by defendant Commercial Union for the periods April 15, 1994 to April 15, 1995 and April 15, 1995 to April 15, 1996. (Ex. 36)

11. According to the "Agent's Guide" published by Commercial Union, its "Nameplate" boiler and machinery insurance provided coverage to "retail stores" for "spoilage" and "off-premises power interruption[s]." (Ex. 5)

12. Based on the representations contained in the "Agent's Guide," Mr. Hannon submitted an application to Commercial Union in March 1994 to obtain boiler and machinery insurance. Under the column labeled "coverage," Mr. Hannon wrote "boiler plate" rather than "Nameplate." (D.I. 65 at 113; Ex. 4B) Under the column labeled "spoilage," Mr. Hannon wrote in "actual loss sustained." (D.I. 65 at 50–54; Ex. 4B)

13. Mr. Hannon and Commercial Union did not communicate about the application. Neither Mr. Hannon nor Mr. Zingo reviewed the Commercial Union policy to confirm off-premises power interruption and spoilage coverage. Mr. Hannon "assumed that what [h]e ordered was what [h]e received from" Commercial Union. (D.I. 65 at 41–43, 54–56, 83–85) Mr. Hannon told Mr. Zingo that the Commercial Union policy contained coverage for off-premises power outages and resulting food spoilage. (D.I. 65 at 41) The policy, however, did not cover losses resulting from off-premises power outages. (*See generally* Ex. 36)

14. It is standard practice for an insurance broker to notify an insured of a reduction in coverage. (D.I. 65 at 104) The lack of off-premises power interruption insurance coverage constituted a reduction in coverage from the LMI and Chubb policies formerly held by Polly Drummond.

15. In February 1995, a representative of Borden–Perlman caused to be submitted to Commercial Union a "request for policy renewal" of the boiler and machinery policy at issue. (D.I. 65 at 72–75; Ex. 39)

16. Commercial Union renewed the policy. No one at Borden–Perlman reviewed the renewal policy before delivering it to Mr. Zingo. Mr. Zingo did not review the renewed policy. (D.I. 65 at 75–76, 85)

17. On July 16, 1995, an off-premises power failure caused spoilage of inventory. (D.I. 65 at 85–88; D.I. 66 at 7–10; Exs. 55, 56) Mr. Zingo called Mr. Hannon and informed him of the problem. Mr. Hannon informed Mr. Zingo that he was covered under his policy of insurance and proceeded to fill out the standard claims forms to submit to Commercial Union. (D.I. 65 at 44–45)

18. Commercial Union denied coverage. Subsequently, Mr. Hannon reviewed the policy at issue and confirmed that it did not provide coverage for off-premises power interruption and food spoilage. (D.I. 65 at 45–46)

19. The "Nameplate" policy Mr. Hannon thought he had procured would not have covered the loss at issue, as it covered only spoilage due to lack of power caused by an accident to "covered equipment" "located on or within 500 feet" of the business. The power failure on July 16, 1995 did not qualify under the above limitation. (D.I. 65 at 85, 108; D.I. 66 at 7–10; Exs. 3, 55, 56)

20. On July 21, 1995, Mr. Hannon supplemented with additional coverage the "Nameplate" policies issued to other supermarket clients because of the 500–foot restriction. (D.I. 65 at 198–201; Ex. 10)

21. It is stipulated that the damages sustained by Polly Drummond as a result of the power outage on July 16, 1995 amounts to $278,866.67. (Ex. 57)

## III. CONCLUSIONS OF LAW

### A. Polly Drummond's Claim Against Borden–Perlman

1. Polly Drummond argues that Borden–Perlman, through its agent, Mr. Hannon, breached its duty to exercise reasonable care in procuring insurance for Polly Drummond and that this breach caused its damages. (D.I. 72 at 8) In order to prevail in a negligence action, "a plaintiff must show, by a preponderance of the evidence, that a defendant's negligent act or omission breached a duty of care owed to plaintiff in a way that proximately caused the plaintiff's injury." *Duphily v. Delaware Elec. Coop., Inc.*, 662 A.2d 821, 828 (Del.1995). Under Delaware common law, an insurance broker has a duty to "exercise reasonable care, skill and diligence in discharging his responsibilities and may be held liable for any damage which results." *Insurance Co. of N. Am. v. Waterhouse*, 424 A.2d 675, 677 (Del.Super.1980). The Third Circuit also has explained that an insurance broker

> is under a duty to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of loss to his customer, then he is liable for such loss unless the customer is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss.

*Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 656 (3d Cir.1968).

2. Borden–Perlman admitted that Polly Drummond was its client. (¶ 1)[2] Borden–Perlman has not disputed that the acts and omissions of Mr. Hannon, a member of the Borden–Perlman agency, may be imputed to it. Accordingly, Borden–Perlman served as Polly Drummond's insurance broker and owed it a duty of care in procuring insurance coverage. *See Lea*, 401 F.2d at 656; *Waterhouse*, 424 A.2d at 677.

3. Polly Drummond elicited testimony that Mr. Hannon mistakenly procured insurance from Commercial Union that did not cover spoilage due to off-premises power interruption. (¶¶ 11–12) Prior to delivering the policy to Mr. Zingo, Mr. Hannon did not read the insurance policy to confirm coverage for such events. (¶ 13) Mr. Hannon simply assumed that the policy covered off-premises power outages and food spoilage. (¶ 9) Upon renewal of the Commercial Union policy, neither Mr. Hannon nor anyone else at Borden–Perlman reviewed the renewal policy before delivering it to Mr. Zingo. (¶ 15) It is standard practice in the insurance industry for brokers to notify insureds of a reduction in the coverage of their policy. (¶ 13) The lack of off-premises power interruption and food spoilage coverage constituted a reduction in coverage from the LMI and Chubb insurance policies.

4. Mr. Hannon's conduct fell below the standard of care owed to Polly Drummond when (1) he failed to realize that the Commercial Union policy did not cover food spoilage resulting from off-premises power outages and (2) failed to notify Mr. Zingo of this reduction in his insurance coverage. *See, e.g., Port Clyde Foods, Inc. v. Holiday Syrups, Inc.*, 563 F.Supp. 893, 896–97 (S.D.N.Y.1982). Accordingly, Borden–Perlman breached its duty of care to Polly Drummond.

5. The only remaining issue is whether Borden–Perlman's negligence caused the damages suffered by Polly Drummond. It is undisputed that Polly Drummond lost $278,866.67 worth of goods

2. The cited paragraphs refer to Part I, Findings of Fact.

due to spoilage resulting from a lightening strike at a Delmarva Power Substation. (¶ 16) This loss was not covered by the insurance policy procured by Borden–Perlman. Thus, unless there was intervening negligence by Polly Drummond, Borden–Perlman's negligence caused Polly Drummond to suffer $278,866.67 in damages.

■ 6. Borden–Perlman argues that Mr. Zingo had a duty to read the insurance policy and, because he did not, his own negligence precludes his recovery.[3] In support of its contention that an insured has a duty to read the insurance policy, Borden–Perlman cites *Hallowell v. State Farm Mutual Auto. Insurance Co.*, 443 A.2d 925 (Del.1982). In that case, the plaintiff sued his insurance carrier and sought to expand his uninsured motorist insurance policy to cover injuries from an underinsured motorist. The Delaware Supreme Court refused, noting (in dicta) that "an insured has a duty to read his insurance policy and he is bound by the provisions thereof if they are clear and unequivocal." *Id.* at 928. In the present case, Polly Drummond (unlike the plaintiff in *Hallowell*) is not attempting to expand its Commercial Union policy to cover food spoilage for an off-premises power outage. To the contrary, all parties agree that the Commercial Union insurance policy unambiguously excluded coverage for such damages. Polly Drummond is in fact suing

Borden–Perlman for negligently failing to procure off-premises power interruption and spoilage insurance coverage. No Delaware court has held that an insured's failure to read the insurance policy precludes a negligence action against the insured's broker for procuring inadequate insurance coverage. Accordingly, Borden–Perlman's "duty to read" defense has no merit.

7. The court concludes that Borden–Perlman's negligence was the legal cause of Polly Drummond's damages. For this reason, the court finds Borden–Perlman liable to Polly Drummond for $278,866.67 (¶ 20) in damages plus interest at 5% over the Federal Reserve discount rate beginning on July 16, 1995.[4] *See* 6 Del.C. § 2301 (1999).

### B. Borden–Perlman's Crossclaim Against Commercial Union

■ 8. The contours of Borden–Perlman's crossclaim are somewhat hard to define, but it appears that it founds its crossclaim against Commercial Union on an indemnification clause in an "Agency Agreement" allegedly in force between Commercial Union and Borden–Perlman.[5] (Ex. 6) According to Borden–Perlman, paragraph 16 of the Agency Agreement provides that "in the event that errors occur in the preparation of policies" by

---

3. Borden–Perlman argues that Mr. Zingo's alleged contributory negligence bars his recovery. Delaware, however, has adopted a comparative negligence regime, *see* 10 Del.C. § 8132 (1999), which reduces the plaintiff's recovery in proportion to the amount of negligence attributed to the plaintiff so long as "plaintiff's negligence was not greater than the negligence of the defendant." *Id.* Borden–Perlman does not address this statute, but the court will assume that it is arguing that Mr. Zingo's negligence exceeded that of Borden–Perlman.

4. There is some confusion as to the exact date of the power outage. During trial and in the post-trial briefs, the parties indicate that it occurred on July 16, 1995. In the stipulation to damages, however, the parties indicate that it occurred on July 17th. The court shall

adopt the earlier date as the starting point for the calculation of accrued interest. If the outage actually occurred on July 17th, the parties shall calculate interest from that date.

5. There is considerable doubt as to whether the Agency Agreement is even in force between Borden–Perlman and Commercial Union with respect to the insurance coverage procured for Polly Drummond. The Agreement specifically appoints Borden–Perlman an agent of Commercial Union in the "Trenton, New Jersey and vicinity" territory. (Ex. 6 at 1) The Agreement does not provide Borden–Perlman with authority to act on Commercial Union's behalf in Delaware. Nonetheless, in the interest of a complete record, the court shall address Borden–Perlman's arguments relating to the Agreement.

Commercial Union, it will provide the coverage requested in the application for insurance coverage. (Ex. 6, ¶ 16)

9. In its opening proposed conclusions of law brief, Borden–Perlman argues that Mr. Hannon requested coverage for " 'actual loss sustained' under the 'spoilage' coverage section" of the insurance application. (D.I. 70 at 9) According to Borden–Perlman, "only Commercial Union's so-called 'Nameplate' policy could supply this actual loss sustained coverage and that was clearly not the policy issued." (D.I. 70 at 10) In other words, Borden–Perlman contends that, under the Agency Agreement, Commercial Union is liable because Mr. Hannon requested the "Nameplate" policy and Commercial Union erroneously issued "boiler and machinery" coverage that did not insure against off-premises power interruption. (D.I. 70 at 9–10) As the court noted, however, Polly Drummond's loss would not have been covered even under Commercial Union's "Nameplate" policy because that policy covers only spoilage due to power interruption caused by an accident "located on or within 500 feet" of the business. (¶ 18)

10. In its reply brief, Borden–Perlman proposes another theory of liability. First, it notes that paragraph 16 of the Agency Agreement provides that, in the event that Commercial Union incorrectly issues a policy, Commercial Union will provide to the insured "the coverage afforded in the application ... for a term equal to that of the application." (Ex. 6, ¶ 16) Second, Borden–Perlman explains that Mr. Hannon requested "spoilage coverage for the actual losses sustained" on the insurance application. (D.I. 74 at 8) Borden–Perlman then concludes that Commercial Union was bound to issue a policy covering spoilage and actual losses sustained for an off-premises power interruption and, because it did not, Commercial Union is liable for Polly Drummond's damages. The evidence indicates, however, that Mr. Hannon's application did not request off-premises power interruption coverage for Polly Drummond. (*See* Ex. 4B) Commercial Union issued exactly what Mr. Hannon requested: a policy covering spoilage and actual losses. Commercial Union can hardly be expected to divine Polly Drummond's need for off-premises power interruption coverage (especially coverage for an interruption that occurred more than 500 feet away from the building) based on an incomplete insurance application.

11. Accordingly, the court shall dismiss Borden–Perlman's crossclaim against Commercial Union.

## IV. CONCLUSION

For the aforementioned reasons, the court finds Borden–Perlman liable in the amount of $278,866.67 plus interest for damages suffered by Polly Drummond. An appropriate order shall issue.