HARRY ORGEL, Respondent, *v.* MAX GOLDSMITH and BEN-JAMIN GOLDSMITH, Copartners, Doing Business under the Firm Name and Style of GOLDSMITH BROTHERS, Appellants.

First Department, May 14, 1920.

**Insurance — action against insurance brokers to recover damages for failing to procure policy of fire insurance — witnesses — failure of plaintiff to call employee — effect on plaintiff's credibility — verdict against weight of evidence.**

In an action against insurance brokers to recover damages sustained by the plaintiff by reason of an alleged breach of duty on the part of the defendants in negligently failing to procure a policy of insurance for him or to notify

him of their inability to do. so, wherein the plaintiff denied ever having received several letters offered in evidence by the defendants to show that they had not promised or agreed to place the insurance and had fully advised the plaintiff at intervals of their inability to do so, and had also advised him to try other insurance brokers, the failure of the plaintiff, who was not able to read the English language readily, to call his book-keeper, who was in the habit of reading his correspondence, without any explanation why she was not called as a witness, cast considerable doubt on the plaintiff's veracity.

On all the evidence, *held*, that the verdict for the plaintiff is against the weight of the evidence.

APPEAL by the defendants, Max Goldsmith and another, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 15th day of January, 1920, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Fifth District, in favor of the plaintiff, and also affirming an order of said Municipal Court denying defendants' motion to set aside the verdict and for a new trial.

*Max Shlivek,* for the appellants.

*Benjamin Bernstein,* for the respondent.

GREENBAUM, J.:

This is an appeal from a determination of the Appellate Term affirming a judgment of the Municipal Court in favor of the plaintiff for the sum of $544.30. The action was brought by the plaintiff against the defendants as insurance brokers to recover damages sustained by him by reason of an alleged breach of duty on the part of the defendants in negligently failing to procure a policy of insurance for him or to notify him of their inability so to do.

Plaintiff was a dealer in feathers engaged in business at 681 Broadway in the city of New York. The defendants had acted as his insurance brokers for about three years. On May 7, 1918, they procured a policy of fire insurance in the Royal Insurance Company in the amount of $750 covering merchandise belonging to the plaintiff. The premium of the policy was $19.59. On August 20, 1918, the company notified the plaintiff in writing that the policy would be canceled within five days for non-payment of the premium. On August 26, 1918, the company notified the plaintiff in writing

that the policy had been canceled. Up to the time of cancellation, the premium had not been paid and there can be no doubt that the policy was properly canceled.

On or about September 20, 1918, the plaintiff sent a check for nineteen dollars and fifty-nine cents, the amount of the premium, to the defendants. According to plaintiff's testimony, he was called up on the telephone by defendants' manager on or about September twenty-fifth and told that his check for nineteen dollars and fifty-nine cents which he had mailed to the defendants was not good and upon that occasion he was told by the person talking in behalf of the defendants that he must have the cash right away, " if not he will cancel the old policy; if not he will make good the old policy or he will give me a new policy and make good; he must have it right away, the cash."

Plaintiff thereupon sent nineteen dollars and fifty-nine cents in cash to the defendants which the latter received. On September 26, 1918, defendants wrote to plaintiff acknowledging receipt of the cash and advising him that after trying to make payment of the premium, the Royal Insurance Company informed them of the cancellation of the policy on August twenty-sixth and that the company refused to reinstate the policy " on account of your bad trade report and bad physical condition of the building in which you are located."

This letter closes as follows: " However, we will endeavor to replace this insurance in another direction and if we succeed will so advise you." The plaintiff admitted that he did not inform the defendants of the notice of cancellation which he had received from the insurance company and it is quite apparent from the evidence that the defendants only learned of the cancellation after the plaintiff had forwarded the check for nineteen dollars and fifty-nine cents on September twentieth.

The evidence is that upon receipt of that check, defendants immediately sent their own check dated September twentieth for seventeen dollars and sixty-three cents, being the difference between the amount of the premium and of their brokerage commission, and that the company refused to accept the check or to reinstate the policy for the reason stated by the defendants in their letter to plaintiff of September twenty-sixth.

First Department, May, 1920. [Vol. 192.

On October 22, 1918, the goods which were the subject-matter of the policy of insurance were destroyed by fire.

Plaintiff's cause of action according to the complaint is based upon the alleged conversation had between the plaintiff and defendants on the twenty-fifth of September to which reference has heretofore been made. Defendants deny that conversation in all its details. They, however, concede that they retained the nineteen dollars and fifty-nine cents for the purpose of endeavoring to replace the insurance in another company. There is thus a sharp difference between the parties as to what defendants had stated they would do with reference to new insurance. Defendants put in evidence an important series of letters written before the date of the fire. The first of these was dated October 1, 1918, in which the defendants advised the plaintiff " that we have up to date been unsuccessful in replacing this insurance for your account. However, as soon as we succeed in securing this insurance will so advise you."

The next letter is dated October ninth, in which the defendants state that they have been unsuccessful in securing insurance in place of the Royal Insurance policy which was canceled in August " on account of the bad physical condition of the building you occupy and also on account of trade reports which the companies have on record and which don't show up to the standard." The letter also stated: " I personally would advise you to therefore try other insurance brokers and let us hear from you if they are successful in obtaining this insurance for your account."

On October eighteenth a third letter was mailed to the plaintiff which reads as follows: " Will you kindly advise us if you have secured the $750 insurance in another company in place of the Royal Insurance policy which was recalled. When I last saw you you said that you have asked another insurance broker to try and get this $750 insurance for your account. Has he been successful? Up to the present writing and again referring to our various letters written you we have failed to place $750 insurance."

Plaintiff denied the receipt of any of these letters. Indeed, he also denied the receipt of several other letters which his counsel, however, conceded upon the trial had been received

by him. Plaintiff claimed that he was not very familiar with the English language, but he admitted there was in his employ a young woman who acted as bookkeeper and who was in the habit of reading his letters. One of the critical issues in the case is whether plaintiff received the letters which the defendants testified were written and mailed to him. The omission on the part of the plaintiff to call his bookkeeper with respect to such an important matter without any explanation why she was not called casts considerable doubt upon the plaintiff's veracity. His testimony in other respects was also very unsatisfactory.

Defendants on the other hand produced a typist who was in their employ at the time that the letters were claimed to have been written who testified that she wrote them at the time when they were dated and corroborated the manager of the defendants who swore positively to his signing such letters and mailing them. It is highly improbable that defendants manufactured these letters. If these letters were sent it would establish that the defendants were diligent in keeping plaintiff informed of their inability to procure insurance and that they advised him to secure the services of another broker. It also appears in evidence that the plaintiff had held a policy in the Hartford Insurance Company procured through the efforts of the defendants and that it was impossible to induce that company to renew it. According to defendants' testimony plaintiff was advised that the goods in which he was dealing were among the worst forms of hazardous risks.

There was not the slightest contradiction of defendants' assertions that insurance was not obtainable for the plaintiff.

The verdict is overwhelmingly against the weight of the credible evidence and the determination of the Appellate Term and the judgment of the Municipal Court should be reversed and a new trial ordered, with costs in all courts to the appellants to abide the event.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Determination and judgment reversed and new trial ordered, with costs in all courts to appellants to abide event.