Harold Tessler, J.
Plaintiff, a used car dealer, sues defendants, insurance brokers, to recover the value of two Cadillac cars which were stolen from plaintiff’s car lot. Plaintiff alleges that the defendants were carelessly negligent in failing to have plaintiff’s cars covered by theft insurance. The case was tried before the court without a jury.
It is conceded that plaintiff ordered theft insurance and that defendants agreed to endeavor to place it on plaintiff’s behalf. Defendants deny liability on two grounds: (1) that they attempted to place the insurance, met with no success and, on October 14, 1959, notified the plaintiff in writing to that effect and (2) that the plaintiff’s lot was uninsurable.
Defendant Sullivan testified that his efforts and endeavors to place the theft insurance consisted of making application to the vEtna Insurance Company and indirectly approaching (through others) three other brokers or agents who rejected the offered business — sight unseen and over the telephone. None of the latter was furnished with an application, any detailed information, nor did they make an inspection of any kind. The .¿Etna was the only one who made an inspection of the lot before refusing the business.
The three other brokers, who were called by the defendants as witnesses, each testified that in his opinion it was possible to place the offered line of insurance, but difficult to do so. Each of them stated that in refusing this business, he was speaking only for his own company and no one else. Monroe Birnberg, defendants’ expert witness, stated that “it was difficult to place ” this line of insurance. The simple fact is, and the record shows, that the insurance actually was placed by the plaintiff through Joseph A. Neumann, a general agent and insurance broker of long experience and good standing in the business, and the insurance was in effect until immediately prior to the time of trial. Mr. Neumann testified that he considered the offered *500 line of insurance to be a desirable one and placeable with several companies as well as his own.
Having agreed to endeavor to place the insurance, it was the obligation of the defendants to use reasonable care and diligence and reasonable skill in their efforts to conclude the transaction for the plaintiff. The court is of the opinion, from the record before it, that the defendants fell far short of that which was required of them under the law.
As stated in Heinemann v. Heard (50 N. Y. 27, 35): “An agent is bound not only to good faith but to reasonable diligence, and to such skill as is ordinarily possessed by persons of common capacity engaged in the same business. (Story on Agency, §§ 183, 186.) Whether or not he has exercised such skill and diligence is usually a question of fact; but its omission is equally a breach of his obligation and injurious to his principal, whether it be the result of inattention or incapacity”. (Italics mine.) (See Burges v. Jackson, 18 App. Div. 296.)
I find that the defendant Sullivan, both individually and in his capacity with the corporate defendant, failed to use reasonable diligence in the discharge of his obligations and responsibilities to the plaintiff, and that he did not use the reasonable care and skill required of him as an insurance broker or agent. As general agent for the New York Underwriters Insurance Company, the defendants could have bound the insurance for an initial and temporary period and thus protected the plaintiff. This, Sullivan testified, he purposefully failed to do. Defendants could have issued this temporary binder without violating their obligation to their company. Defendants’ deliberate failure to thus protect the plaintiff is some evidence of negligence and lack of reasonable diligence and skill on their part.
Defendants’ attempt to avoid liability by the alleged notification to the plaintiff by letter of October 14,1959, is not supported by the credible evidence. I find defendant Sullivan’s testimony regarding the preparation and signing of the letter of October 14, 1959, to be incredible. From all of the facts and circumstances testified to by the defendant Sullivan, himself, and his other witnesses, Mrs. Tardo, the receptionist, and his associate, Mr. Patitucci, I am constrained to believe that no such letter was ever sent to the plaintiff. It is significant to note that Mrs. Sullivan, who allegedly typed the letter, was not called to testify, nor was any explanation offered for her absence. It is my conviction that Sullivan simply forgot about the insurance after his first few meager efforts to place the line and, for reasons best known to himself, did not or would not report the loss to his company under his errors and omissions policy.
*501 The court notes that according to his own testimony Sullivan, except for the alleged letter of October 14, 1959, did no more than state to the plaintiff that he was having difficulty in placing the insurance. Not once did he state flatly that the insurance was not obtainable nor did he ever invite the plaintiff to try to get it elsewhere. It is of some significance to the court that on his own testimony Sullivan never once contacted the plaintiff after the alleged letter of October 14, 1959, by phone, in person or otherwise, until notified about the loss on November 3, 1959.
In the trial memoranda submitted to the court defendants’ attorneys pointedly state that “ this case rests upon sharply drawn issues of fact.” The court agrees and is constrained to resolve these issues of fact in favor of the plaintiff.
The defendants urge upon the court the case of Orgel v. Goldsmith (192 App. Div. 49), stating: “ This case is practically on all fours.” The court agrees that the cases are remarkably alike, except that in the Orgel case the defendant insurance brokers did everything that the instant defendants failed to do — and, additionally, in that case the court found as a fact that the defendants notified the plaintiff in writing of their inability to place the insurance and notified him to seek the services of another broker. In this case the court has found to the contrary. Furthermore, in the Orgel case the court placed much significance upon the plaintiff’s failure to call his bookkeeper to testify regarding the critical issue of the receipt of the letter or letters sent him by the defendants. In this case, the defendants are guilty of the same omission in failing to call Mrs. Sullivan, the person who allegedly typed the letter of October 14, 1959. The Orgel case compels the decision here being made. The other cases cited by the defendants in their memorandum are neither referable nor controlling to the issues presented in the instant case.
I find that (1) the defendants failed to use the ordinary skill, reasonable care and diligence in their attempts to obtain the theft insurance for the plaintiff; (2) the defendants failed to notify plaintiff of their lack of success and (3) the plaintiff’s lot was not uninsurable, although it may well have been difficult to insure.
Accordingly, I find that the plaintiff is entitled to judgment against the defendants in the sum of $10,277.50 together with interest, costs and disbursements.