**BAYLY, MARTIN & FAY, INC., a Colorado corporation, and Norman Sterling, Jr., individually, Petitioners,**

v.

**PETE'S SATIRE, INC., a Colorado corporation, d/b/a the Satire Lounge, and Pete Contos, individually, Respondents.**

No. 85SC164.

Supreme Court of Colorado,
En Banc.

June 22, 1987.

As Modified on Denial of Rehearing
July 13, 1987.

**240**

Renner & Rodman, John R. Rodman, Denver, for petitioners.

Robert E. Goodwin, Denver, for respondents.

QUINN, Chief Justice.

In *Pete's Satire, Inc. v. Commercial Union Insurance Co.*, 698 P.2d 1388 (Colo. App.1985), the court of appeals affirmed a declaratory judgment in favor of a bar and restaurant owner against an insurance brokerage firm and its representative for negligently failing to procure insurance coverage which included protection against risks relating to the consumption of alcoholic beverages on the premises by customers. The court of appeals acknowledged that a plaintiff-owner has the burden of proving by a preponderance of the evidence that insurance for the specific risk could have been obtained and held that in this case the plaintiffs had satisfied the appropriate burden of proof. We granted certiorari to consider whether the court of appeals properly resolved the issue relating to the burden of proof on the availability or unavailability of insurance to cover the risk against which a person seeks insurance protection. We affirm the judgment of the court of appeals.

### I.

Pete Contos is the principal shareholder of Pete's Satire, Inc., a Colorado corporation doing business as a bar and restaurant under the name of The Satire Lounge, located in Denver. Contos also owns and operates another Denver bar and restaurant, the Olympic Flame. In 1980 Contos and Pete's Satire, Inc. commenced this declaratory action against the following defendants: Norman Sterling, Jr. (Sterling), a licensed insurance agent and vice president and representative of Bayly, Martin & Fay, Inc. (Bayly), an insurance brokerage firm authorized to sell policies for various insurance companies; Bayly, the insurance brokerage firm which Sterling represented; and Commercial Union Insurance Company (Commercial Union), the company from which Sterling procured a multi-peril policy for Contos' Satire Lounge. Contos and Pete's Satire, Inc., sought a judicial declaration (1) that Sterling and Bayly were liable in negligence for failure to provide liquor liability insurance—that is, liability

insurance for selling or serving alcoholic beverages at the Satire Lounge, as requested by Contos, and were also responsible for expenses incurred by Contos and Pete's Satire, Inc. in successfully defending a lawsuit based on the alleged negligence of Pete's Satire, Inc. in serving alcoholic beverages to a patron of the Satire Lounge on March 7, 1979, and (2) that Commercial Union was liable as principal for the negligence of its agents, Sterling and Bayly, in failing to provide the coverage requested by Contos. In their answer Sterling and Bayly claimed that Contos was given an opportunity to obtain liquor liability coverage but requested that such coverage not be provided. Commercial Union raised the defense that the multi-peril policy issued to Contos expressly excluded coverage for bodily injury or property damage for which the insured may be held liable as a person or organization engaged in the business of selling or serving alcoholic beverages.

The case was tried to the court. The record, when viewed in a light most favorable to the trial court's findings, established the following facts. In 1975 Contos negotiated with Sterling, with whom he had a long-standing friendship, for the purchase of a multi-peril insurance policy for the Satire Lounge. According to Contos' testimony, he specifically sought liquor liability insurance and Sterling assured him that he (Sterling) would obtain comprehensive coverage for the Satire Lounge at a fair price. Sterling procured a multi-peril policy from Commercial Union, which policy, unknown to Contos, did not provide liquor liability coverage. On July 3, 1978, Sterling obtained a renewal policy from Commercial Union for a three-year period. The renewal policy contained the same liability coverage as the former policy. At various times during the effective period of Commercial Union's coverage, Sterling assured Contos that he was "fully covered." In fact, Contos specifically questioned Sterling in 1977 on the issue of liquor liability coverage and was told, "Don't worry about it, you are covered."

In 1980 Pete's Satire, Inc. was sued for negligence by John C. Thomas. The Thomas lawsuit alleged that Pete's Satire, Inc. negligently served alcoholic beverages to a customer, Richard Duane Wold, who was visibly intoxicated, and that Wold subsequently left the premises and operated a motor vehicle in a manner that caused injury to Thomas, who was his passenger. When Nancy McFarland, the manager of the Satire Lounge, contacted Sterling about the lawsuit, Sterling informed her that the claim was covered under the Commercial Union policy. Commercial Union, however, refused to defend Pete's Satire, Inc., concluding that the policy provisions explicitly excluded coverage for such a claim. Contos hired independent counsel to handle the lawsuit and incurred various legal expenses in the process. Pete's Satire, Inc. eventually prevailed in that litigation. *Thomas v. Pete's Satire, Inc.*, 717 P.2d 509 (Colo.App. 1985).

Contos presented testimony showing that in 1977 or 1978 Sterling procured liquor liability coverage for Contos' other establishment, the Olympic Flame. Sterling included liquor liability coverage in that policy, which apparently was written by a company other than Commercial Union, but did not mention that provision to Contos and did not advise Contos that the Satire Lounge policy should be reviewed and changed. Sterling admitted on cross-examination by Contos that liquor liability insurance was available in the insurance industry on July 3, 1978, when the multi-peril policy was issued to Contos, that he had procured such insurance for establishments similar to the Satire Lounge, that such insurance was usually written by companies covering substandard risks, and that Bayly could arrange for such coverage with those companies. There was further testimony by Pete Kappos, a licensed Colorado insurance agent, that to his knowledge liquor liability coverage had been written for bars and restaurants for a substantial period prior to 1978 and was certainly available when the multi-peril policy was written on the Satire Lounge.[1]

---

1. The underwriting manager for Commercial

Union, a defense witness, testified that, although

At the conclusion of the plaintiffs' case and again at the conclusion of all the evidence, Sterling and Bayly moved for a judgment of dismissal on the basis that the plaintiffs had failed to show that liquor liability insurance was available to the Satire Lounge on July 3, 1978, when Commercial Union's renewed policy was issued to Contos. The trial court denied the motions and made extensive findings of fact including, as applicable here, a finding that "at the time of the negotiations for the insurance contract on Pete's Satire Lounge in 1975 and specifically in 1978, there was available in the insurance industry 'liquor liability coverage' for businesses engaged in the selling of alcoholic beverages to the general public and that said coverage had been available for approximately twenty (20) years." The court concluded that Sterling and Bayly were negligent in failing to obtain the necessary coverage and hence were responsible for all expenses incurred by Pete's Satire, Inc. in the Thomas litigation and that Commercial Union was similarly liable as principal for the negligence of its agents, Sterling and Bayly.

Sterling, Bayly and Commercial Union appealed to the court of appeals. In rejecting the claim that Contos and Pete's Satire, Inc., had failed to establish by a preponderance of the evidence that other insurance could have been obtained, the court of appeals stated:

> Here, the Lounge and Contos proved: (1) that the type of insurance covering this type of loss was available in the industry at the time of the occurrence; (2) that Contos had purchased this type of coverage through Sterling and Bayly for the Olympic Flame; and (3) that, although Commercial Union put on evidence that the coverage might not have been available to Contos or the Lounge through it, there was no evidence that the coverage was not available through other carriers. Under these facts, the Lounge and Con-

tos sufficiently carry their burden on this issue.

698 P.2d at 1390. The court of appeals reversed the judgment against Commercial Union. Noting that the policy expressly excluded the risk at issue in this case and that Contos and Pete's Satire, Inc. were "charged with knowledge of the restrictions in the policy," it concluded that any contrary oral representations by Sterling and Bayly could not "impose liability on an insurer where [those representations] contradict the terms of the insurance contract." 698 P.2d at 1391.[2]

Sterling and Bayly filed a petition for certiorari on whether the court of appeals correctly held that Contos and Pete's Satire, Inc., satisfied the appropriate burden of proof with respect to the availability of liquor liability insurance.

## II.

Basic principles of tort law provide the framework for determining the burden of proof in a negligence action predicated on the failure of an insurance broker or agent servicing the insurance needs of the plaintiff to procure a particular type of insurance coverage sought by the plaintiff. A cause of action founded on negligence requires proof of the following elements: (1) a duty or obligation, recognized by law, requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure or breach of duty by the defendant to conform to the standard required by law; (3) a sufficient causal connection between the offensive conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of the plaintiff. *Largo Corp. v. Crespin*, 727 P.2d 1098, 1102 (Colo.1986); *Leake v. Cain*, 720 P.2d 152, 154 (Colo.1986); W. Keeton, *Prosser and Keeton on Torts* § 30, at 164–65 (5th ed. 1984). The burden of proving the elements of a negligence claim is on the

---

Commercial Union did not write liquor liability insurance for "walk-in establishments" such as the Satire Lounge, liquor liability coverage was available in 1978 under certain circumstances.

**2.** Contos and Pete's Satire, Inc. have not petitioned for certiorari review of the court of appeals' resolution of Commercial Union's liability under the policy, and we do not address that aspect of the case in this opinion.

plaintiff, and that burden is by a preponderance of the evidence. *See, e.g., Palmer v. A.H. Robins Co.*, 684 P.2d 187, 209–10 (Colo.1984); *Franklin v. Wilson*, 161 Colo. 334, 336, 422 P.2d 51, 51 (1966); *American Ins. Co. v. Naylor*, 101 Colo. 34, 37–39, 70 P.2d 349, 351–52 (1937).

■ There is no question that an insurance broker or agent who agrees to obtain a particular form of insurance coverage for the person seeking such insurance has a legal duty to obtain such coverage or to notify the person of his failure or inability to do so. *E.g.*, G. Couch, *Cyclopedia of Insurance Law* §§ 25:46, 25:47 (2d ed. 1960). The issue in this case relates not to the existence of this duty or its breach but rather to causation and damages. In *Heller-Mark & Co. v. Kassler & Co.*, 37 Colo. App. 267, 544 P.2d 995 (1976), which involved a negligence action for damages due to a fire loss resulting from the alleged failure of a servicing agent to forward assignment of insurance forms to the insurer in conjunction with the assumption of a loan by the plaintiff, Heller-Mark, the court of appeals addressed the burden of proof with respect to the failure to obtain fire insurance. After noting that the essence of Heller-Mark's cause of action was that the servicing agents' negligence caused the absence of insurance coverage, which in turn resulted in damage to Heller-Mark, the court of appeals reasoned as follows:

> It would be insufficient under these circumstances merely to allege loss of opportunity to seek insurance coverage where the attempt might not have been successful; rather, the ultimate purpose to be effected is to allow recovery where, had the defendant acted properly, plaintiff would not only have had the opportunity to seek, but also could have successfully procured alternative insurance. Heller-Mark recognized this requirement in its amended complaint when it alleged loss resulting from the absence of alternative coverage. This allegation was not mere surplusage.

> The law is well established that the plaintiff must show by a preponderance of the evidence that other insurance could have been obtained, which requirement arises out of the plaintiff's obligation to prove causation and damages.

37 Colo.App. at 269–70, 544 P.2d at 997.

The holding of the court of appeals in *Heller-Mark* is consistent with an established line of authority from other jurisdictions. *See, e.g., Smither v. United Benefit Life Ins. Co.*, 164 Kan. 447, 190 P.2d 183 (1948) (in action seeking declaration that decedent's written insurance application for accident insurance, plus conversation with agent, constituted insurance contract, plaintiff must prove that decedent could have obtained other insurance covering same risk); *MacDonald v. Carpenter & Pelton, Inc.*, 31 A.D.2d 952, 298 N.Y.S.2d 780 (1969) (in negligence action by purchasers of property against insurance broker, failure of property owners to show that fire insurance could have been obtained for property defeated their claim against insurance broker, since proximate cause element of claim not established); *Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298 (Tex. Civ.App.1979) (in negligence action by boat owner against insurance agent for failure to obtain insurance on boat, failure of boat owner to prove that coverage was available under any policy was fatal to claim); *Pacific Dredging Co., v. Hurley*, 65 Wash.2d 394, 397 P.2d 819 (1964) (dredge owner's action against insurance broker for negligently failing to extend or renew maritime insurance ordered dismissed where owner failed to prove that the requested insurance, even if obtained, would have insured against the particular loss in question); *Wallace v. Metropolitan Life Ins. Co.*, 212 Wis. 346, 248 N.W. 435 (1933) (denial of coverage on life insurance policy upheld where no evidence that applicant could have obtained other insurance).

A few courts, emphasizing the fact that the availability of other insurance is peculiarly within the knowledge of those working in the insurance industry, have held that causation need not be proven by the plaintiff and will become an issue only if raised as an affirmative defense. *See, e.g., Patterson Agency, Inc. v. Turner*, 35 Md.

App. 651, 372 A.2d 258 (1977); *Hans Coiffures International, Inc. v. Hejna*, 469 S.W.2d 38 (Mo.App.1971). We believe this approach is inconsistent with that elementary principle of tort law which requires the plaintiff to establish the elements of a cause of action.

█ Where, as here, a claim for relief is predicated on the negligent failure of an insurance broker or agent to procure a particular type of insurance coverage sought by the plaintiff, it is incumbent upon the plaintiff to prove by a preponderance of evidence, as an aspect of causation and damages, that such insurance was generally available in the insurance industry when the broker or agent obtained insurance coverage for the plaintiff. A plaintiff is not required to show that the particular insurance company from which the servicing broker or agent procured the plaintiff's policy would have written such coverage or that the servicing broker or agent could have obtained such coverage from a specific company. On the contrary, consistent with the rule of *Heller-Mark*, 37 Colo.App. 267, 544 P.2d 995, we hold that a plaintiff satisfies his burden of proof when he establishes that the type of insurance which he sought was generally available in the insurance industry when the broker or agent procured the plaintiff's insurance policy. *Cf. Smither*, 164 Kan. 447, 190 P.2d 183 (plaintiff's burden is to show that "other insurance" could have been obtained); *Fleetwood Motors, Inc. v. John F. James & Sons, Inc.*, 38 Misc.2d 499, 237 N.Y.S.2d 668 (1963) (plaintiff car dealer permitted to recover against insurance broker for failure to place theft insurance to cover theft of automobiles on plaintiff's lot where evidence showed that plaintiff's lot "was not uninsurable, although it may well have been difficult to insure"); *Zeff Distributing Co. v. Aetna Casualty & Surety Co.*, 389 S.W.2d 789 (Mo.1965) (jury question existed on element of proximate cause where evidence showed that plaintiff was a poor risk and that requested policy was difficult to obtain but did not demonstrate conclusively that plaintiff was uninsurable in any reputable company); *Stinson*, 579 S.W.2d at 298 (plaintiff must establish that "the loss is one insured against in *some* policy").

█ Once the plaintiff has made out a prima facie case in negligence, the burden of going forward with contrary evidence devolves on the defendant. *Judkins v. Carpenter*, 189 Colo. 95, 98, 537 P.2d 737, 738 (1975); *American Insurance Co. v. Naylor*, 101 Colo. at 37, 70 P.2d at 352. In defense of the claim, the defendant may present evidence that the type of insurance sought by the plaintiff was not generally available in the insurance industry when the broker or agent procured the plaintiff's insurance policy, or that, even if this type of insurance was generally available, the plaintiff nonetheless was uninsurable due to the high risk of loss associated with the plaintiff's activity or operation, or was uninsurable due to other reasons particular to the plaintiff or to the plaintiff's activity or operation. With the case in this posture, "[t]he whole case is then thrown open to be decided as a fact, upon all the evidence." *White v. Hurlbut Grocery Co.*, 62 Colo. 483, 485, 162 P. 1143, 1144 (1917) (quoting *Ward v. Teller Reservoir & Irrigation Co.*, 60 Colo. 47, 55, 153 P. 219, 222 (1915)). It must be emphasized, however, that in no sense does the burden of proof on the essential elements of a negligence claim shift to the defendant. On the contrary, the ultimate burden of persuasion remains with the plaintiff. *Judkins*, 189 Colo. at 98, 537 P.2d at 738.

## III.

█ We turn now to consider whether Contos and Pete's Satire, Inc., as plaintiffs, satisfied their burden of proof on the availability of other insurance. In urging that the burden of proof was not satisfied, Sterling and Bayly argue that there was no evidence establishing that liquor liability insurance would have been available for the Satire Lounge on July 3, 1978, when Sterling procured the Commercial Union policy for Contos. As already discussed, however, the plaintiffs' burden in this case was only to establish that the liquor liability insurance which Contos sought from

Sterling was generally available in the insurance industry when Sterling procured the insurance policy for the Satire Lounge. A review of the record adequately demonstrates that Contos and Pete's Satire, Inc. satisfied the burden of proof on the general availability of liquor liability insurance.

There was evidence showing that in 1977 or 1978 Sterling procured liquor liability coverage for the Olympic Flame, Contos' other establishment, thereby raising a reasonable inference that Sterling could have procured similar coverage for Contos' Satire Lounge in July 1978. Furthermore, Sterling admitted that as representative of the insurance brokerage firm of Bayly, he could have applied to companies other than Commercial Union for liquor liability insurance on behalf of Contos. Finally, there was further testimony by Pete Kappos, a licensed insurance agent, that liquor liability insurance had been available to bars and restaurants for a substantial period prior to July 1978. Indeed, the trial court expressly found that liquor liability insurance was available for the Satire Lounge in 1978 and had been available in the insurance industry for twenty years. The fact that Commercial Union might not have provided liquor liability insurance for the Satire Lounge does not disprove the general availability of such insurance when Sterling serviced Contos' request for such insurance in 1975 and again in 1978.

It was the prerogative of the trial court in the exercise of its fact-finding function to evaluate the credibility of the witnesses, to weigh the evidence, and to draw reasonable inferences from the evidence. Where, as here, there is sufficient evidence to support the findings of the trial court, we will not substitute our judgment for that of the fact finder. *E.g., Teodonno v. Bachman,* 158 Colo. 1, 4, 404 P.2d 284, 285 (1965).

The judgment is affirmed.