OPINION
 

 COMPTON, Justice.
 

 I.
 
 INTRODUCTION
 

 The Blomfields owned and managed an office building, which they leased to the State of Alaska, Department of Labor (State). State employees became ill, apparently from a contaminant in the ventilation system. The Blomfields so informed their insurance agent, an employee of Johnson & Higgins of Alaska (J & H). The agent assured the Blomfields that any loss they suffered as a result of the problem was covered by an “all risk” insurance policy he had obtained for them from American & Foreign Insurance Company (A & F). When a demand was made on A & F, however, it denied coverage and sued the Blomfields, seeking a declaration that the loss was not covered by the policy. The Blomfields counterclaimed against A & F, and eventually settled that case. The Blom-fields then sued J & H. Judgment was entered on a jury verdict in the Blomfields’ favor. J & H appeals. We affirm in part, reverse in part, and remand for further proceedings.
 

 
 *1373
 
 II.
 
 FACTS AND PROCEEDINGS
 

 A.
 
 Factual History
 

 Plaintiffs Charles Alfred Blomfield (Chuck) and Patricia Blomfield own a building which they lease to the State. Chuck’s son, Charles Anthony Blomfield (Tony), has managed the Blomfield properties since Chuck’s heart attack in 1982. For many years Don Durall has been the insurance agent for the Blomfields. Mr. Durall works for J & H.
 

 For 1985 and 1986 Mr. Durall obtained insurance for the Blomfields’ building through A & F. In late 1985, a number of employees working in the building complained of respiratory problems. The State alleged that these problems were linked to the presence of mold. The Blomfields attempted to cure the problem with a thorough cleaning. Tony Blomfield testified that he contacted Mr. Durall at this time and confirmed that the expenses were covered by the insurance policy. However, nobody made a formal claim with A & F. The State declared the building untenantable and vacated it in February 1986. The State stopped paying rent in June. Mr. Durall filed a claim with A & F on behalf of the Blomfields. The Blomfields made extensive renovations to the building. A & F denied coverage. The State reoccupied the building and resumed paying rent in December.
 

 A & F sought a declaratory judgment that the Blomfields’ expenses and losses were not covered under the policy because of a contamination exclusion, and the delay in reporting the claim to A & F. The Blomfields counterclaimed for $1,845,946. They claimed to have spent more than $1 million in renovating the building, “sustained a loss of rents in the amount of $888,675.84,” and incurred other “costs, legal fees, extraordinary management fees, and increased building operating expenses for the useful life of the [structure].” They settled with A & F for $480,-000. A & F admitted no fault. The Blom-fields and A & F did not specify which damages, if any, were covered by the insurance policy, and which damages, if any, were covered by the settlement.
 

 B.
 
 Procedural History
 

 The Blomfields sued J & H for breach of contract, negligence, and misrepresentation, claiming the same damages as in the A & F litigation. The damages portion of the Blom-fields’ complaint against J & H was copied verbatim from the Blomfields’ counterclaim to A & F’s complaint.
 

 J & H listed the Blomfields’ trial attorneys as potential witnesses. Apparently, J & H was trying to prove either that the settlement with A & F was unreasonably low or that the Blomfields had relied on the advice of, rather than any alleged misrepresentations by, Mr. Durall. The Blomfields moved for and were granted a protective order that precluded J & H from calling the Blomfields’ counsel at trial. J & H did call as a witness A & F’s counsel in the settlement negotiations. He testified that he was surprised and pleased by the low amount for which the Blomfields were willing to settle their claim against A & F.
 

 Before trial the Blomfields agreed to reduce the initially-claimed nine categories of damage to three: renovation, lost rents (less operating expenses saved), and interest. J & H agreed not to contest the reasonableness of the Blomfields’ mitigation expenditures. The parties then stipulated to the amount of damages for which the Blomfields were seeking recovery, but not to the responsibility for them. The parties agreed that these damages totaled $1,011,087 as of January 1,1987. The jury found that Mr. Durall breached his agent’s contract with the Blomfields’ performed his professional services negligently, and misrepresented the scope of the insurance coverage. J & H was held vicariously liable as Mr. Durall’s employer. The jury did not award damages for the alleged misrepresentation, but did award the stipulated damages for the contract and professional negligence claims. In addition, the jury assigned 40% of the fault to the Blomfields, 60% to J & H, and awarded the Blomfields $10,000 in punitive damages.
 

 Throughout the trial, counsel for J & H attempted to clarify the A & F settlement’s effect on the amount of damages to be assessed against J & H. The court reserved this issue. After the verdict, the court ruled
 
 *1374
 
 that there would be no offset for the A & F settlement. The court held that J & H had not met its burden to show that the damages in the settlement duplicated the damages in the trial, and that “[t]he only damages relevant to a decision in this case are those which describe those losses not covered by insurance.” The court then entered judgment for the Blomfields for 60% of the $1,011,087 in stipulated damages, plus interest. The court also entered judgment for the Blomfields for $10,000 in punitive damages, as well as costs and attorney’s fees. J & H’s motion for judgment notwithstanding the verdict was denied, and this timely appeal followed.
 

 III.
 
 DISCUSSION
 

 A.
 
 Breach of Contract, Professional Negligence and Sufficiency of the Evidence
 

 J & H challenges the sufficiency of the evidence to support the breach of contract, professional negligence and punitive damages special verdicts. We view the evidence in the light most favorable to the non-moving party. “Our task is not to weigh the evidence or judge the credibility of the witnesses. Our task is merely to determine whether there is room for diversity of opinion among reasonable people. If so, the question is one. for the jury.”
 
 Levar v. Elkins,
 
 604 P.2d 602, 604 (Alaska 1980).
 

 In entering its final judgment, the trial court did so based upon an allocation of fault, thereby implicitly adopting the Blomfields’ professional negligence claim for relief as the basis for the damages to which they were entitled. The Blomfields might have argued that their recovery against J & H should be based on the breach of contract, and that accordingly there should be no apportionment of fault. However, the Blomfields did not advance this argument to the superior court. Therefore, it is waived.
 
 See Zeman v. Lufthansa German Airlines,
 
 699 P.2d 1274, 1280 (Alaska 1985). We need not address whether there was sufficient evidence to support the breach of contract verdict.
 

 J & H challenges the sufficiency of the evidence to support the professional negligence verdict. Like other negligence actions, a claim of professional negligence requires proof of duty, breach, causation, and damages.
 
 Linck v. Barokas & Martin,
 
 667 P.2d 171, 173 n. 4 (Alaska 1983). J & H contends that expert testimony was required to show the standard of care required of an insurance agent. We disagree. While expert testimony is generally required in medical malpractice cases, it is not a general requirement of all professional negligence actions, especially “in non-technieal situations where negligence is evident to lay people.”
 
 Kendall v. State,
 
 692 P.2d 953, 955 (Alaska 1984).
 

 We conclude that the proper standard of care of an insurance agent is not “of such professional abstrusity that standards can be determined only with the aid of expert testimony.”
 
 Northern Lights Motel, Inc. v. Sweaney,
 
 561 P.2d 1176, 1192 (Alaska 1977). The jury could properly consider evidence beyond the expert testimony presented to conclude that Mr. Durall acted negligently.
 
 [1]
 

 J & H argues that the Blomfields had the burden to show that coverage was commercially available for the loss sustained.
 
 Bayly, Martin & Fay, Inc. v. Pete’s Satire, Inc.,
 
 739 P.2d 239 (Colo.1987);
 
 Russell v. Reliance Ins. Co.,
 
 672 S.W.2d 693, 694 (Mo.App.1984). This seems to be the majority rule.
 
 Bayly,
 
 739 P.2d at 243-44. In some jurisdictions, the absence of commercially available coverage is treated as an affirmative defense rather than an element of the plaintiffs case.
 
 Id.
 
 at 243. We need not determine which party has the burden of proof on this issue, because we conclude that the Blomfields met their burden. The Blom-fields’ expert, Mr. May, testified regarding the availability of alternative insurance. He concluded that he thought it more probable than not that another carrier would have
 
 *1375
 
 provided coverage without a contamination exclusion. This is sufficient for a reasonable jury to find commercial availability.
 
 [2]
 

 B.
 
 Disposition of the Settlement
 

 In the litigation between the Blomfields and A & F, the parties agreed to a $480,000 settlement without specifying which damages, if any, were covered by the insurance policy, or which damages, if any, were covered by the settlement.
 

 In the instant case, the Blomfields claimed the same damages as they did against A & F. Pursuant to a stipulation, the Blomfields withdrew certain of their claims (those relating to legal fees, increased past and future operating expenses, extraordinary management fees, and future restoration expenses) in return for J & H’s promise not to contest the Blomfields’ claim that their damages for renovation work, lost rental income, and interest amounted to $1,011,087.01. The jury found J & H liable for the stipulated damages. The trial court refused to offset the award by the amount the Blomfields had received from A & F, finding that “[t]he only damages relevant to decision in this case are those which describe losses not covered by [the A & F settlement].”
 

 The Blomfields assert the A & F settlement was taken into account in arriving at the stipulated damages figure, and that the damages they sought against J & H were “over and above” the $480,000 received from A & F.
 
 [3]
 
 J & H, on the other hand, states that it assumed the A & F settlement would be deducted from the stipulated damages because the Blomfields sought the same damages from A & F and J & H. Neither position is supported directly by any evidence in the record. The intention of the parties to the settlement is difficult to decipher. We need not do so here.
 

 The settlement between the Blomfields and A & F can be viewed as an agreement between the parties that $480,000 of the damage was in fact insured. Put another way, the Blomfields expected full coverage and got coverage with a policy limit of $480,-000. The conclusion reached by the trial court requires the assumption that the settlement with A & F dealt with losses completely uncovered by the insurance policy.
 

 When an insured settles with an insurance company on a claim arising out of the insurance agent’s alleged failure to procure insurance requested by the insured, we view that as a concession of coverage to the extent of the settlement amount for purposes
 
 *1376
 
 of the suit against the agent. As a matter of law, we view the settlement as a partial coverage of the loss. Because the insured’s claim against the agent for failure to obtain insurance compensates the insured for the difference between the coverage expected and the coverage obtained, the settlement is deducted from the total damage award.
 

 C.
 
 The Protective Order
 

 The parties discuss two possible purposes for the testimony of the Blomfields’ attorneys. The Blomfields assume that J & H wanted to show that the Blomfields relied on the advice of counsel, not Mr. Durall. This goes to the reliance element of the misrepresentation claim. Because the jury found no damages as a result of Mr. Durall’s alleged misrepresentations and this conclusion was not appealed, this issue is moot.
 

 J & H argues that the testimony might have shown that the settlement was unreasonably low, and therefore not proper mitigation. J & H made no offer of proof at trial indicating this purpose for the testimony.
 
 See
 
 Alaska R.Evid. 103(a)(2);
 
 Agostinho v. Fairbanks Clinic,
 
 821 P.2d 714, 717 (Alaska 1991). We conclude that any error in the protective order is either moot or has not been preserved for review.
 
 [4]
 

 D.
 
 Punitive Damages and the Sufficiency of the Evidence
 

 Finally, J & H challenges the sufficiency of the evidence to support the award of punitive damages. We will overturn an award of punitive damages only if consideration of the record as a whole leaves us with a firm conviction of error and the need to intervene to prevent a miscarriage of justice.
 
 Alaskan Village, Inc. v. Smalley,
 
 720 P.2d 945, 948 (Alaska 1986). We are left with such a conviction in this case.
 

 An award of punitive damages must be supported by clear and convincing evidence. AS 09.17.020. Furthermore, punitive damages may only be awarded “where the wrongdoer’s conduct can be characterized as outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of others.”
 
 Bridges v. Alaska Hous. Auth.,
 
 375 P.2d 696, 702 (Alaska 1962). “ ‘Actual malice need not be proved. Rather, “[rjeckless indifference to the rights of others, and conscious action in disregard of them ... may provide the necessary state of mind to justify punitive damages.” ’ ”
 
 Barber v. National Bank of Alaska,
 
 815 P.2d 857, 864 (Alaska 1991) (quoting
 
 Sturm, Ruger & Co., Inc. v. Day,
 
 594 P.2d 38, 46 (Alaska 1979) (quoting Restatement (Second) of Torts § 908 (Tent.Draft No. 19, 1973)),
 
 modified,
 
 615 P.2d 621 (Alaska 1980),
 
 cert. denied,
 
 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981),
 
 overruled on other grounds, Dura Corp. v. Harned,
 
 703 P.2d 396 (Alaska 1985)). Mere negligence is insufficient to justify an award of punitive damages.
 

 The Blomfields allege that Mr. Du-rall was slow to investigate the problems with the building. However, until the problems were discovered, Mr. Durall believed that he had obtained proper coverage for the Blomfields. After the discovery, it was too late. There were no outrageous acts sufficient to sustain an award of punitive damages in the present case. The evidence supports the conclusion that Mr. Durall acted negligently, but not outrageously.
 

 E.The Release of Claims Against A&F
 

 J & H argues that the Blomfields released J & H from the suit when they released A&F. The release is not a part of the record. It is a general rule that evidence not contained in the appellant’s record is presumed to support the verdict. 4 Am. Jur.2d
 
 Appeal and Error
 
 § 523 (1962). We so presume. J & H has failed to preserve this issue for review.
 

 
 *1377
 
 IV.
 
 CONCLUSION
 

 We AFFIRM the judgment holding J & H liable to the Blomfields for an amount representing insurance coverage that would have covered the losses sustained in this case had J & H not been professionally negligent. We REVERSE the superior court’s refusal to grant J & H an offset for the amount received by the Blomfields from A & F. J & H’s objection to the superior court’s protective order is either moot or has not been properly preserved for review. We REVERSE the award of punitive damages. Lastly, J & H has failed to preserve for review the issue whether the release of A & F also released J & H. We REMAND the case for proceedings consistent with this opinion.
 

 [1]
 

 . This evidence included testimony that Mr. Du-rall (1) did not procure the insurance coverage the Blomfields requested; (2) did not make himself or his clients aware of a possible gap in coverage; (3) accordingly failed to obtain additional coverage; (4) did not visit the building; (5) did not investigate the problems at the building; (6) did not contact the tenant about the issues; and (7) never discussed the extent of the problem with state personnel.
 

 [2]
 

 . The decision in
 
 Russell
 
 treats the showing of commercial availability as a requirement for both contract and professional negligence actions.
 
 Russell,
 
 672 S.W.2d at 694. There may be a valid distinction between the two. If a broker makes an explicit promise to obtain a type of insurance and does not disclose that he or she has been unable to do so, the commercial availability of such coverage logically may be irrelevant to the contract action. Instead, the requirement may more properly be viewed as an element of only the tort action.
 
 But see Bayly,
 
 739 P.2d at 243-44 (treating requirement as an element of causation, not duty). Because we conclude that the evidence was sufficient on this point, we need not resolve this question.
 

 [3]
 

 . The Blomfields' argument that “the $480,000 settlement payment had already been deducted to arrive at the stipulated damage figure of $1,011,087.01” does not ring true. The stipulated damage figure constitutes the heart of the Blomfields' claim. The Blomfields had submitted a nine-item claim. The stipulation covered three of the items in their entirely: Claim # 1, actual expenditures which represented “the reasonable and necessary expenses incurred to satisfy the requirements of the State of Alaska,” $692,573.82; Claim # 5, total lost rents under the state lease, $256,675.84; and Claim # 8, interest expense, $61,837.35. The claims which were not covered by the stipulation were Claim # 2, legal fees, $43,549.04; Claim # 3, additional management expenses attributable to time spent by Tony Blomfield, $57,200; Claim #4, additional time spent by Charles and Patricia Blom-field, $112,000; Claim #6, increased operating expenses from January 1, 1983 through December 31, 1986, due to occupancy by the Department of Labor, $39,524; Claim # 7, an estimate of costs needed in the future to restore the building to its original condition, $327,442.50; Claim # 9, estimated future operating expenses for 1987, $156,162. Whatever the eventual value of the claims which were not covered by the stipulation might have proven to be had they been litigated, it is apparent that the liquidated and traditionally allowable damage claims were encompassed in the claims that were covered by the stipulation. The assertion that A & F paid for the other claims, but not for the stipulated claims, is not supported by the record, and not credible as argument.
 

 [4]
 

 . Although J & H raises the issue of whether the trial court erred in denying its motion to disqualify the Blomfields’ attorney, it devotes only one paragraph of its brief to this issue. In that paragraph, J & H implies that the Alaska Rules of Professional Conduct required the Blomfields' attorney to withdraw, but it does not cite to any specific rule, nor does it elaborate on how that rule might have been violated in this instance. Because of this insufficient briefing, we will not consider the point on appeal.
 
 See Adamson v. Univ. of Alaska,
 
 819 P.2d 886, 889 n. 3 (Alaska 1991).