SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 THE CIRCLE. SUITE 2
GEORGETOWN, DELAWARE 19947

October 29, 2018

Francis J. Jones, Jr., Esquire
Morris James, LLP
803 North Broom Street
Wilmington, Delaware 19806

David G. Culley, Esquire
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899-2092

Robert D. Schultz, Esquire
14 North Hanson Street
Easton, Maryland 21601

Re: ***Slaubaugh Farm, Inc., et al. v. Farm Family Cas. Ins. Co.,***
**C.A. No. S16C-06-033 ESB**

On Defendant McGowan's Motion for Summary Judgment: GRANTED

Date Submitted: July 16, 2018
Date Decided: October 29, 2018

Dear Counsel,

This my decision on Defendant Joseph C. McGowan's Motion for Summary Judgment on the Plaintiffs' claim that he negligently failed to obtain snow-ice insurance coverage for their two new chicken houses. The Plaintiffs built two new chicken houses and contacted McGowan, an insurance agent for Defendant Farm Family Casualty Insurance Company ("Farm Family"), in an effort to secure

insurance from Farm Family. Farm Family issued a binder for an insurance policy on June 30, 2015. The binder did not include snow-ice coverage. However, McGowan contacted Farm Family to see if Farm Family would issue that coverage to the Plaintiffs. One of Farm Family's requirements for such coverage is that it would have to first inspect the Plaintiffs' new chicken houses. McGowan asked Farm Family to do that. Farm Family acknowledged McGowan's request and put the Plaintiffs' new chicken houses on a list to be inspected. Despite that, Farm Family never inspected the Plaintiffs' chicken houses and McGowan apparently never checked on the status of the inspection. During the weekend of January 23 and 24 of 2016, over six months after McGowan had asked Farm Family to inspect the chicken houses, a blizzard swept through Sussex County, Delaware, causing one of the Plaintiffs' new chicken houses to collapse.

McGowan argues that (1) he had no duty to acquire snow-ice coverage for the Plaintiffs, (2) he had no duty to make sure that Farm Family inspected the Plaintiffs' new chicken houses, and (3) the Plaintiffs cannot prove proximate cause because they have not shown that snow-ice coverage was available to them. I have rejected McGowan's first two arguments and accepted his third.

## STATEMENT OF FACTS

Plaintiffs Lambert and Sarah Slaubaugh purchased a farm in 1998 located at

13055 Judy Road, Greenwood, Delaware. At approximately the same time, Plaintiffs purchased a property insurance policy (Policy No. 0703G2213) from Farm Family through McGowan, an insurance agent for Farm Family. This policy was initially issued in the name of the Slaubaughs individually and covered all of the building structures on their farm including two existing chicken houses.

Farm Family issued a new liability-only insurance policy (Policy No. 0703G2650) in the name of Slaubaugh Farm, Inc. on June 15, 2003. Also procured through McGowan, this policy was renewed every year through June 15, 2015.

Farm Family issued a Notice of Cancellation of the property insurance policy (Policy No. 0703G22213) on May 2, 2011, because the Plaintiffs had failed to comply with its request for an inspection of the two existing chicken houses. This notice followed the 2010 winter season in which the Delaware region experienced two large snow storms in a matter of days. During this season, Farm Family suffered large claim losses from collapses due to snow load. As a result, Farm Family non-renewed all of its chicken business outside of the Mid-Atlantic and Northeast region. In this latter region Farm Family changed its underwriting guidelines to eliminate snow-ice coverage (Peril Group 5) for all new customers, but continued to insure certain buildings owned by existing customers only under Peril Group 4 (which excludes snow-ice coverage). Farm Family required that these buildings be inspected before

3

its underwriting department would determine, on a case-by-case basis, whether an individual building could be insured under Peril Group 5. In keeping with these underwriting changes, Farm Family required an inspection of the Plaintiffs' two existing chicken houses. Plaintiffs refused to allow the inspection and the property insurance policy was cancelled. Plaintiffs obtained replacement insurance from the Conservative Amish Mennonite ("CAM") Association.

The Plaintiffs obtained a $900,000 mortgage loan from Mid-Atlantic Farm Credit to build two new chicken houses on their farm on December 23, 2014. Subsequently, the Plaintiffs entered into a written contact with Kingston Construction Equipment, LLC ("Kingston") to construct the houses. It was the Plaintiffs' understanding that during the construction phase the builder would maintain property insurance on the houses, but that Plaintiffs would have to have their own insurance in place when the first flock of birds arrived. In late 2014 or early 2015, Mr. Slaubaugh contacted McGowan to inform him that he intended to build two new houses and requested that Farm Family insure them. McGowan in turn contacted Scott Dunkin, an underwriter for Farm Family, to inquire as to Farm Family's new underwriting guidelines because this was McGowan's first experience insuring a chicken house since the guidelines had changed. Dunkin confirmed that the new houses could be insured under Peril Group 4 but that an inspection would be needed

4

before Farm Family could consider coverage under Peril Group 5.

Mr. Slaubaugh called McGowan on June 25, 2015 to inform him that the construction of the two new chicken houses was almost complete. He further informed McGowan that he needed insurance on the houses and that confirmation of the insurance coverage had to be sent to the mortgage company. Mr. Slaubaugh did not request any specific coverage. McGowan prepared an application and submitted it, together with the necessary supporting documentation, to Farm Family. McGowan submitted a binder request to Farm Family on June 30, 2015 for coverage on the two new chicken houses and related buildings. The binder request was approved by Farm Family under Peril Group 4 subject to a "truss inspection by BKruse to be considered for Peril Group 5." A copy of the coverage binder was emailed to the mortgage company as Mr. Slaubaugh had requested.

Even though the Plaintiffs never requested any specific coverage for the two new chicken houses, McGowan assumed that they would want Peril Group 5 coverage if it was available. He therefore specifically asked Farm Family to consider Peril Group 5. At this time, Heidi Hayes, an individual in McGowan's office, was responsible for scheduling new chicken houses for inspection pursuant to a Professional Consulting Services Agreement with Farm Family. Under this independent contractor agreement Ms. Hayes scheduled chicken houses for Farm

5

Family's employee, Brad Kruse, to inspect during his periodic trips to the Mid-Atlantic region.[1] It is undisputed that authorization had to come from Farm Family's underwriting department before a house could be placed on the inspection list.

According to Hayes, she initiated the process for the Slaubaugh houses to be inspected. In an email to Kruse on July 23, 2015, Hayes confirmed that the Slaubaugh farm was on the list of "new risks" for inspection. Kruse responded to the email by inquiring as to the identity of the builder. On July 24, 2015, Kruse sent a separate email on the same subject to Dunkin. Despite these communications, Farm Family never inspected the two new chicken houses prior to the snow storm.

## SUMMARY JUDGMENT

This Court will grant summary judgment only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact.[2] Once the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[3] The Court views the evidence in a light most favorable to the nonmoving party.[4] Where the

---

[1] Ms. Hayes used her personal cell phone to make these arrangements and submitted separate invoices to Farm Family's underwriting department for her time.

[2] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[3] *Id.* at 681.

[4] *Id.* at 680.

6

moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden shifts, the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial.[5] If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of the case, then summary judgment must be granted.[6] If, however, material issues of fact exist or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is not appropriate.[7]

## DISCUSSION

### 1. McGowan's Duty to Obtain Snow-Ice Coverage

McGowan argues that he had no duty to obtain snow-ice coverage for the Plaintiffs' chicken houses, stating "that Mr. Slaubaugh asked for 'insurance' on the houses and also that a copy of the binder be sent to the mortgage company." Put another way, McGowan argues that the Plaintiffs never asked him for the insurance coverage they would now like to have. The Plaintiffs argue that McGowan himself has both admitted and acted in a manner contrary to his argument.

---

[5] Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[6] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991), *cert. den.*, 504 U.S. 912 (1992); *Celotex Corp.*, 477 U.S. 317.

[7] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

7

The Plaintiffs point out that in his deposition when asked if he advised Farm Family that the Plaintiffs desired Peril Group 5, McGowan stated "correct." Peril Group 5 includes snow-ice coverage. The Plaintiffs also point out that McGowan asked Farm Family to consider the Plaintiffs' new chicken houses for snow-ice coverage. Lastly, the Plaintiffs point out that McGowan directed Hayes to put the Plaintiffs' new chicken houses on the list of houses to be inspected by Farm Family, an inspection required before Farm Family would issue snow-ice coverage.

An insurance agent "assumes only those duties normally found in an agency relationship."[8] This duty includes "the obligation to use reasonable care, diligence and judgment in procuring the insurance requested by the insured."[9] An insurance agent must "offer coverage in the way that a reasonably competent agent would under the circumstances."[10] Generally, an insurance agent does not have a duty to advise a client with respect to appropriate insurance coverage.[11] This general rule, however, does not apply if the agent voluntarily assumes the responsibility for selecting the appropriate coverage or if the insured makes an ambiguous request for coverage that

---

[8] *Sinex v. Wallis*, 611 A.2d 31, 33 (Del. Super. 1991).

[9] *Id.*

[10] *Montgomery v. William Moore Agency*, 2015 WL 1056326, at *2 (Del. Super. Ct. Feb. 27, 2015).

[11] *Id.*

8

requires clarification.[12]

Viewing McGowan's statements and actions in the light most favorable to the Plaintiffs, there is certainly a genuine issue of material fact as to whether McGowan had a duty to obtain snow-ice coverage for Plaintiffs, making the granting of summary judgment in his favor unwarranted. Quite frankly, McGowan's own statements and actions undermine his argument on this issue.

2. McGowan's Duty to Ensure That The Inspection Of The Chicken Houses Took Place

McGowan argues that it was Farm Family's responsibility to get the Plaintiffs' new chicken houses inspected and that he played no role in getting that done. The new chicken houses were not inspected before the blizzard. The Plaintiffs point out, and I think correctly, that McGowan's role in getting the chicken houses inspected was not as limited as he argues.

There is no doubt that McGowan requested Farm Family to consider the Plaintiffs' new chicken houses for Peril Group 5 coverage. On June 29, 2015, McGowan requested Farm Family to consider the Plaintiffs' new chicken houses for Peril Group 5 coverage in an email to Dunkin. On the following day, Dunkin approved the binder request and added the following note that went to McGowan:

_____

[12] *Id.*

9

Approving addition of 2 new poultry buildings as Peril Group 4, Rate type #2. Will need full set of approved IBC complaint Blueprints to be considered for Rate type #1 and a truss inspection by B[rad] Kruse to be considered for Peril Group 5.

This note certainly suggests that Dunkin was looking to McGowan to get the blueprints. McGowan then instructed Hayes to schedule the Plaintiffs' new chicken houses for inspection. Hayes then apparently contracted Brad Kruse, a Farm Family employee, with the request to have him inspect the Plaintiffs' chicken houses. In a email to Kruse on July 23, 2015, Hayes confirmed that the Plaintiffs' new chicken houses were on the list of new risks for inspection. Kruse responded to the email by inquiring as to the identity of the builder. On July 24, 2015, Kruse sent a separate email on the same subject to Dunkin. For whatever reason, despite the passage of six months, Kruse never inspected the Plaintiffs' new chicken houses and McGowan never did anything about it.

It is, as the parties agree, well-settled law that an agent has the obligation to use reasonable care, diligence and judgment in procuring the insurance requested by the insured.[13] It is difficult for me to conclude at this time that McGowan used reasonable care, diligence and judgment in procuring the snow-ice coverage for the Plaintiffs.

---

[13] *Jadczak v. Assurant, Inc.*, 2010 WL 445607, at * 2 (Del. Super. Ct. Jan. 21, 2010) ("Normally, an insurance agent has the obligation to use reasonable care, diligence and judgment in procuring insurance requested by an insured....").

10

McGowan was the person who initiated the inspection of the Plaintiffs' new chicken houses, discussed the matter with Farm Family, and was apparently involved in getting the blueprints from the Plaintiffs and to Farm Family for that inspection. As such, he was the person who stood between the Plaintiffs and Farm Family. There are, of course, a number of actions that must be performed in order for a person to procure insurance. The prospective insured must fulfill some obligations. The agent must be proactive. The insurance company must do some legwork. Information must flow back and forth between the parties. Conditions must be identified and satisfied. Monies must be paid. An agent certainly has an important role in this process. Given that McGowan got the inspection process started, and his duty was to use reasonable care, diligence and judgment in procuring snow-ice coverage for the Plaintiffs, I would have thought, at the very least, that he would have kept track of whether Farm Family's inspection of the new chicken houses had been done or not and kept the Plaintiffs aware of that. It certainly is not too much to expect of McGowan to, at the very least, follow-up with Farm Family and to communicate the status of his efforts to get snow-ice coverage to the Plaintiffs. Frankly, if McGowan had inquired about the status of the inspection, and communicated that to the Plaintiffs, then the Plaintiffs would have been in the position to continue to work with Farm Family or pursue snow-ice coverage from another insurance company. Indeed, even if

11

McGowan had inquired, it might have prompted Farm Family to, at least, realize that it had not inspected the new chicken houses. Instead, McGowan and Farm Family did nothing for over six months.

The notion that McGowan can say, well, I got the inspection process started and was asked to get the blueprints, but never checked with Farm Family to see whether the inspection was done for over six months, hardly seems to me to be the exercise of reasonable care, diligence and judgment in getting the Plaintiffs' snow-ice coverage. Given all of this, summary judgment in favor of Farm Family on this point is not appropriate.[14]

### 3. Proximate Cause

McGowan argues that the Plaintiffs must show that his alleged negligence was a proximate cause of their injury. More specifically, McGowan argues that the Plaintiffs must show that there was snow-ice coverage that was commercially available for their loss. McGowan argues that it is too speculative to conclude that Farm Family could have provided such coverage given that (1) Farm Family had ended such coverage for new customers in 2011, and (2) the availability of the such

---

[14]McGowan argues that the Plaintiffs' allegations implicate McGowan's affirmative duties or responsibilities beyond Plaintiffs' request for insurance and, therefore, they should have offered expert testimony to establish his duty in this regard. However, McGowan testified he sought Peril Group 5 coverage for Plaintiffs. I do not believe an expert is necessary to establish whether McGown had a duty to follow up on the process he initiated.

coverage for the Plaintiffs was contingent upon a satisfactory inspection of their new chicken houses and Farm Family had in the past not received favorable inspection results for Kingston, the builder of the Plaintiffs' new chicken houses.

The Plaintiffs argue that Farm Family's comments about Kingston are so non-specific as to be meaningless and that, in any event, it was McGowan's and Farm Family's fault for not getting the inspection done and that if there is any uncertainty about whether Farm Family would have approved the new chicken houses for snow-ice coverage that the uncertainty should be resolved in favor of the Plaintiffs at this point.

As with other negligence actions, "a claim of professional negligence requires proof of duty, breach, causation, and damages."[15] Jurisdictions differ as to whether it is the plaintiff's burden to show that, had the defendant acted properly, plaintiff would not only have had the opportunity to seek, but also could have successfully procured alternative insurance, or whether causation only becomes an issue if the defendant raises it as an affirmative defense.[16] I agree with the rationale adopted by the Supreme Court of Colorado and others: to treat causation as an affirmative defense "is inconsistent with that elementary principle of tort law which requires the

---

[15] *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1374 (Alaska 1995).

[16] *See Patterson Agency, Inc. v. Turner*, 372 A.2d 258, 261-62 (Md. Ct. Spec. App. 1977).

13

plaintiff to establish the elements of a cause of action."[17] Accordingly, I adopt their holding herein:

> Where... a claim for relief is predicated on the negligent failure of an insurance broker or agent to procure a particular type of insurance coverage sought by the plaintiff, it is incumbent upon the plaintiff to prove by a preponderance of evidence, as an aspect of causation and damages, that such insurance was generally available in the insurance industry when the broker or agent obtained insurance coverage for the plaintiff. A plaintiff is not required to show that the particular insurance company from which the servicing broker or agent procured the plaintiff's policy would have written such coverage or that the servicing broker or agent could have obtained such coverage from a specific company. On the contrary, ... we hold that a plaintiff satisfies his burden of proof when he establishes that the type of insurance which he sought was generally available in the insurance industry when the broker or agent procured the plaintiff's insurance policy.[18]

I conclude that in this regard the Plaintiffs have come up short. It is far too speculative to conclude that Farm Family, or any other insurance company, would have ultimately provided snow-ice coverage to Plaintiffs. Even if Farm Family had completed the inspection, there is no guarantee that they would have offered snow-ice coverage to the Plaintiffs. If anything, the facts, even when viewed in the light most favorably to the Plaintiffs, do not support such a conclusion. Farm Family and other insurance companies had many claims for snow damage following the 2010 winter

---

[17] *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 244 (Colo. 1987).

[18] *Id.*

season, causing them to cease offering snow-ice coverage to new customers. The only evidence in the record is that Farm Family did not have a favorable view of Kingston, the Plaintiffs' builder. There are, as McGowan suggests, other ways for the Plaintiffs to meet their burden in this regard. The Plaintiffs could have gathered testimony and information on the availability of such coverage in the area industry at the time, but did not do so. Therefore, I have granted McGowan's Motion for Summary Judgment on this issue.

## CONCLUSION

I have GRANTED Defendant Joseph C. McGowan's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ E. Scott Bradley*

E. Scott Bradley

oc: Prothonotary
All Counsel of Record